# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF TEXAS

## BEAUMONT DIVISION

| | | |
|---|---|---|
| **WESTLEY POLLARD, JR.** | ∫ | |
| | ∫ | |
| **Plaintiff,** | ∫ | |
| | ∫ | |
| **v.** | ∫ | **Civil Action No. _____** |
| | ∫ | **Jury Requested** |
| **EXXONMOBIL CHEMICAL CO.,** | ∫ | |
| **A Division of Exxon Mobil Corp.,** | ∫ | |
| | ∫ | |
| **Defendant.** | ∫ | |

## PLAINTIFF POLLARD JR.'S ORIGINAL COMPLAINT

Westley Pollard, Jr., hereinafter "Pollard," files this original complaint against ExxonMobil Chemical Co., hereinafter "XOM," and states his claims for relief as follows.

## 1.

## Jurisdiction and Venue

1.1 This action arises under the laws of the United States of America.

1.2 The jurisdiction of this Court is invoked pursuant to the provisions of 28 U.S.C. § 1331, federal question; 28 U.S.C. § 1343, civil rights, and 42 U.S.C. § 2000e-5, unlawful discrimination in employment.

1.3 Venue properly lies in this Court pursuant to the General Venue Statute, 28 U.S.C. § 1391( b ) and ( c ), in that the claim arose in Beaumont, Jefferson County, Texas, where the defendant is doing business and is subject to personal jurisdiction.

1.4 This Court is requested to exercise its supplemental jurisdiction according to 28 U.S.C. § 1367 over claims arising under the Constitution and statutes of the State of Texas that are so related to the federal claims in this action that they form part of the same case or controversy under the United States Constitution.

## 2.

## Nature of the Claims and Relief Sought

2.1 Pollard presents claims arising from and related to his having been subjected to racial discrimination in his employment.

2.2 Having been unable to resolve his claims informally or administratively, Pollard seeks a declaration of this Court that the disparate and abusive treatment to which he was subjected by XOM violated and continues to violate his rights under federal and state law, to his substantial consequential damage.

2.3 Pollard prays that upon the verdict of the jury, this Court award and enter judgment in his favor against XOM restoring him to his employment and rightful place within XOM's facilities and directing that XOM pay Pollard damages in the amounts found by the jury for lost pay and benefits, damages to his personal and

professional reputation, humiliation and emotional distress, serious injury to his health, loss of enjoyment of life, and diminished earning capacity.

2.4 Pollard further prays that this Court confirm that XOM acted with respect to Pollard intentionally, maliciously, and with reckless disregard for Pollard's rights and person, directing XOM to pay punitive damages to the fullest amount found by the jury and allowed by law.

2.5 Pollard further prays for the recovery of reasonable attorney's fees, the costs of this action to include the fees and expenses of expert witnesses, prejudgment and postjudgment interest and all other relief to which he may show himself entitled at law or in equity.

2.6 Pollard filed sworn charges of racial discrimination with the United States Equal Employment Opportunity Commission and the Civil Rights Division of the Texas Workforce Commission, participated in the administrative investigation, received a notice of his right to file suit on his claims, and is filing this lawsuit within the time provided in the notice.

## 3.

## <u>The Parties</u>

3.1 Pollard is an adult, male citizen of the United States and the State of Texas, residing in Beaumont, Jefferson County, Texas, and until the events leading to this

action was employed by XOM at the ExxonMobil Chemical Co. Refinery in Beaumont.

3.2 ExxonMobil Chemical Co. is a corporation, a division of Exxon Mobil Corp., doing business in Beaumont, Jefferson County, Texas, engaged in the refining, marketing, transportation and sale of petrochemical and polymer products in interstate commerce.

3.3 At all times material to this action, ExxonMobil Chemical Co. employed more than 500 persons.

3.4 Summons and a copy of this complaint may be served as provided in Rule 4, Fed.R.Civ.P., on Stephen D. Pryor, president of ExxonMobil Chemical Co. at the corporate headquarters, 13501 Katy Freeway, Houston, Texas 77079-1398.

**4.**

**General Statement of Facts**

4.1 During 18 years of employment by XOM at the Beaumont refinery, Pollard demonstrated exceptional ability and dedication, earning excellent performance reviews and advancement.

4.2 In his 18th year of employment, he was a step-up supervisor in the Olefin Unit, being assigned interim supervisory duties as needed.    He had been

recommended for and was expecting promotion to a position at the XOM refinery in Baytown.

4.3 In addition to his regular and supervisory duties, he had been given special assignments to develop materials to train refinery employees.

4.4 In his regular and supervisory assignments, Pollard worked a 48-hour weekly schedule, which provided premium pay for overtime work exceeding 40 hours a week.

4.5 While on special assignment, Pollard would maintain his hourly and any overtime pay, but was assigned to a regular day shift, rather than rotating work days on an evening shift.

4.6 Because the special assignment Pollard was given in 2011 required him to work outside the refinery premises, Pollard was provided a laptop computer from which he could access the company's network.

4.7 Pollard also had a work station at the refinery, including a desktop computer.

4.8 While on special assignment, Pollard worked and communicated with Dr. Richard Ortloff, an employee at the Baytown refinery, and Neil Blahut, an XOM contractor.

4.9 In his special assignment, Pollard worked at the Beaumont refinery, and he also worked at the Baytown refinery and spent substantial time completing assignments in the evenings at his home.

4.10 Pollard informed his refinery supervisors when Pollard was required to work away from the refinery.

4.11 Pollard submitted regular reports of his work time to his supervisors for approval and submission for salary payments.

4.12 Pollard was pleased with the special assignment and worked diligently, many times until late at night after leaving the refinery premises.

4.13 Regrettably, White coworkers resented and were envious of Pollard's advancement and the terms of his special assignment, particularly because of Pollard's being an African-American.

4.14 Coworkers, including some supervisors, made racially derogatory statements, accusing Pollard of arrogantly flaunting his status by purchasing a new home and new cars, even going to the extent of suggesting that Pollard might be supplementing his earnings by the criminal selling of drugs.

4.15 In June, 2011, Pollard was summoned to a supervisor's office.

4.16 Pollard was excited and was looking forward to what he believed would be an announcement of his promotion.

4.17 Instead, at the meeting Pollard was accused of claiming pay for hours that he had not worked.

4.18 Pollard was told that the hours indicated by his logging in and out of the refinery were much less than the hours he had reported and for which he had been paid.

4.19 Pollard explained that in his assignment he could and at times had to work outside the refinery, that he informed his supervisors and regularly reported his hours for approval, and that there had been no prior question or indication of any problem.

4.20 Melissa Chance, an XOM employee who was initially asked to review the situation, stated informally to a coworker that she could find no wrongdoing by Pollard.

4.21 A different individual was assigned to investigate, and reported that the hours for which Pollard was paid were not confirmed by the system for logging in and out of the refinery.

4.22 On the basis of the second individual's report, Pollard was fired, even though XOM knew Pollard did authorized work outside the refinery.

4.23 XOM officials knew or should have known that the accusation and abrupt firing would result in Pollard's being considered as having been fired for stealing, which turned out to be the case.

4.24 Even though other employees and Pollard himself had been compensated in the same manner while on special assignment, and even though an experienced, retired employee confirmed that Pollard had acted appropriately, Pollard's firing was allowed to stand.

4.25 Pollard was discharged and wrongfully accused by XOM because of his race, and the reason XOM asserted for the firing was demonstrably pretextual.

4.26 Due to the circumstances of his firing, Pollard was unable to obtain any comparable employment and had to file for bankruptcy.

4.27 The strain placed on Pollard by XOM's actions caused Pollard extreme emotional distress, at times resulting in such elevated blood pressure that he had to be hospitalized on an emergency basis, with what was considered as a life-threatening condition.

4.28 In firing Pollard and refusing to give any consideration to reasonable explanations by objective and credible individuals, and in allowing obviously unwarranted accusations to stand, XOM acted with apparent malice and reckless disregard for its conduct and in derogation of Pollard's rights.

4.29 It was necessary for Pollard to obtain the services of the undersigned counsel and attorney-at-law to investigate the circumstances, assist in the

administrative investigation, attempt to informally resolve his claims, and present and prosecute this lawsuit.

**5.**

**First Claim for Relief**

**Civil Rights Act of 1964, as Amended, 42 U.S.C. §§ 2000e-5 *et seq.***

5.1 By its acts as above described, XOM intentionally discriminated against Pollard because of Pollard's race.

5.2 Upon confirmation of the acts of invidious discrimination, this Court must order Pollard reinstated to his rightful place as an employee of XOM, and judgment must be entered against XOM in favor of Pollard for the amount of lost pay and benefits he establishes and any other damages allowed by law.

**6.**

**Second Claim for Relief**

**Civil Rights Act of 1865, 42 U.S.C. § 1981**

6.1 By its acts as above described,  XOM deprived Pollard of rights secured to him to make and enforce his contract of employment as enjoyed by White citizens.

6.2 Upon the finding of the jury, this Court must award Pollard monetary relief for consequential and punitive damages to the full extent found by the jury.

**7.**

Plaintiff Pollard Jr.'s Original Complaint                                                    Page 9

## Third Claim for Relief

## Amendment to the Civil Rights Act of 1865, 42 U.S.C. § 1981a

7.1 In the alternative, to the extent that Pollard cannnot recover damages fully under 42 U.S.C. § 1981, this Court still must award Pollard monetary relief for consequential and punitive damages in the amount of $300,000.00, as provided by law for an employer with the number of employees that XOM has.

## PRAYER

Plaintiff prays that trial of this case be expedited as provided by law and that upon the findings of the jury, the Court enter mandatory and prohibitory injunctive relief requiring ExxonMobil Chemical Co. to restore Pollard to employment in his rightful place and desist from any further acts of discrimination or any acts of retaliation.

Plaintiff prays further that the Court enter judgment against ExxonMobil Chemical Co. in favor of Pollard for lost pay and benefits, such additional consequential and punitive damages as found by the jury, a reasonable attorney's fee and the costs of this action, with prejudgment and postjudgment interest as provided by law, together with any other relief to which Pollard might show himself entitled.

Respectfully submitted,

/S David T. López

_____
David T. Lopez
Attorney-in-Charge for Plaintiff
State Bar of Texas No. 12563000
3900 Montrose Boulevard
Houston, TX 77006-4959
Telephone: 713.523.3900
Email: dtlopez@lopezlawfirm.com

OF COUNSEL:

David T.  Lopez & Assoc.

## **REQUEST FOR JURY**

Plaintiff Westley Pollard, Jr., respectfully requests that all issues of fact in this case be determined by a jury.